No. 81-214

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN RE THE MARRIAGE OF
D.C.,

        Petitioner and Respondent,

    -vs-

M.C.,

        Respondent and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellant:

        Jones Law Firm, Billings, Montana

    For Respondent:

        Lynaugh, Fitzgerald, Schoppert & Skaggs,
        Billings, Montana
        Terry L. Seiffert, Billings, Montana

---

Submitted on Briefs: September 3, 1981

Decided: November 25, 1981

Filed: NOV 25 1981

_Thomas J. Kearney_ Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The marriage of D.C. (the husband) and M.C. (the wife) was dissolved in January 1981 in the District Court of the Thirteenth Judicial District, Yellowstone County, Montana. M.C. appeals from the portions of the decree relative to property disposition, maintenance and attorney fees. We reverse the District Court in regard to all three of those portions of the decree.

The parties were married in 1960. Three children were born to them. At the time of the trial, only one of the children was a minor, and she was 17 years of age. The husband was 44 years of age and the wife was 40 years of age when the trial was had. The property of the couple consisted of the family home and its furnishings, the parties' personal effects, and two old and unreliable automobiles. The husband has been employed by the Western Union Telegraph Company since 1960 and expects to remain with that company until retirement. His gross income at the time of trial was slightly in excess of $20,000 per year. The wife did not graduate from high school. She had no outside employment during the marriage. The wife's contribution to the marriage consisted of raising the children, cooking and cleaning. The testimony revealed that the wife's contribution diminished during the course of the marriage, primarily because of mental problems.

The husband testified that within a few weeks of their marriage it became evident that his wife was incapable of doing the shopping and bringing home the groceries. Early in the marriage the husband observed that his wife had a

mental disorder which limited her ability to function normally. Unfortunately, it was not until the time of the dissolution, nearly 20 years later, that the wife was first brought to a psychiatrist for diagnosis and treatment. The wife's psychiatric and psychological reports were entered in evidence in lieu of direct testimony by the wife. The content of those reports is pertinent to our resolution of this case.

M.C.'s psychologist reported that M.C. was suffering from "a severe emotional disturbance diagnosed as schizophrenic reaction, chronic undifferentiated type." The psychologist's clinical description of the effects of this disorder is that M.C. has "decreased coping skills, limited intellectual problem-solving capabilities," and has experienced "withdrawal from participation in the world of everyday events, and withdrawal from meaningful interpersonal relationships." The psychologist found that M.C.

> "is functioning at a borderline level of intelligence classification. However, this is not a consequence of limited intellectual resources, but is more a function of her severe emotional withdrawal during recent years. This person is a chronic emotionally disturbed individual who has not participated meaningfully in the everyday events of the world around her during recent years. As a consequence, there has been a sharp deterioration in intellectual functioning because of disuse."

The psychologist found M.C. to be in the bottom ten per cent of the general population intellectually. Most important for our purposes, M.C. was found to be "disabled as far as her ability to participate in the competitive job market." The prospects for an improvement in her condition do not appear good. "The prognosis for a chronic undifferentiated schizophrenic reaction is very guarded. The likelihood that this woman would benefit from professional psychotherapy is

low." The report recommended that M.C. "should be provided assistance through some public facility, such as [the] Division of Vocational Rehabilitation." It appears that vocational rehabilitation would serve as therapy rather than preparation for employment: "If she is given help in the form of employment assistance, she should be required to participate in job functions in a meaningful way in order to receive her check." Finally, the report advised that M.C. would also need assistance from the Department of Social and Rehabilitative Services in the form of basic life skills training.

The District Court must consider a number of factors in arriving at a disposition of property in a dissolution proceeding. Among these factors are: the duration of the marriage; the age, health, occupation, vocational skills, estate, liabilities, employability, amount and sources of income and needs of each of the parties; whether the property disposition is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. Section 40-4-202, MCA. Before a court can award maintenance in a dissolution proceeding, there must be a finding that the spouse seeking maintenance lacks sufficient property to provide for his reasonable needs and that the spouse is unable to support himself through appropriate employment. Section 40-4-203(1), MCA. If maintenance is to be awarded, the amount and duration of the award is determined by considering: the financial resources of the party seeking maintenance, including marital property apportioned to him and his ability to meet his needs independently; the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard

of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. Section 40-4-203(2), MCA.

The decree of dissolution in the case before us made three allocations to the wife. First, the husband was ordered to provide medical insurance for the wife via a basic medical policy and a major medical policy. The total monthly premiums for the policies was $62.82 at the time of trial. There is no indication in the record of the amount that these policies provide for psychiatric treatment. Second, the wife was awarded a portion of the furniture and household items. Third, the wife was to be given 50 per cent of the net proceeds of the sale of the family home, after deduction of closing costs, real estate fees, fees of the wife's attorney and her guardian ad litem, a home improvement loan, the cost of the wife's pretrial psychiatric examinations, capital gains taxes, and all other taxes, liens or encumbrances on the home. The wife's cash award from the sale of the home, after all deductions, would be less than $25,000 without consideration of potential income taxes. This sum was to be put in a trust fund, the proceeds of which were to provide for the care, support and maintenance of the wife. In her appeal, the wife argues that the court erred by: (1) requiring one-half of the wife's attorney fees to be paid out of the proceeds of the sale of the home; (2) not awarding maintenance to the wife; and (3) not awarding the wife a larger share of the proceeds of the sale of the house.

The District Court based its determination of the
financial aspects of this case upon factual considerations
which are not always supported by the record.  The court
noted that the husband had two outstanding debts which would
not be extinguished by the sale of the house.  The court
also noted that the couple's three children were still
residing at home.  Without elaboration, the court found that
it was reasonable to assume that the husband would continue
to carry the financial burden of being a parent beyond the
date of the children's majority.  The District Court also
found that the husband was not financially able to pay
maintenance to the wife other than providing medical insurance,
and that the only means of providing financial assistance to
the wife was from her 50% of the equity in the family home.

The total obligation owing under the two debts mentioned
above was only $1,325.88, an amount that would be paid off
in the near future.  The record does reveal that the husband
had a desire to continue to aid his children beyond the time
when the law requires such aid from him.  However, we find
nothing in the law which transmutes parental generosity into
an obligation which relieves a spouse from a potential duty
to provide maintenance in a dissolution action.

The court found that the wife was "suffering from a
severe emotional psychological disturbance."  The court also
found, in a mild understatement, that the wife "may experience
difficulty in obtaining and keeping any type of employment."
And, even though the court found that the wife will need
psychological health care treatment in the future, and that
her minimum living expenses would be $600.00 per month, the
court's decree requires this 40 year old woman to live off

of a trust with a principal of less than $25,000.00.

It is clear that the income from the trust could not meet the $600.00 per month minimum living expenses of the wife. If principal is used to meet her needs, the trust soon would be exhausted. This Court has held under facts similar to those in the present case that if the effect of not awarding maintenance is to make a spouse a ward of the state, maintenance should be awarded if possible. Stenberg v. Stenberg (1973), 161 Mont. 164, 505 P.2d 110. That holding is applicable in this case notwithstanding the adoption of the Uniform Marriage and Divorce Act in 1975. The record shows that the wife has no employment skills, and in addition, her psychological, emotional and intellectual condition are such as to prevent her from being employed in the foreseeable future. The record does not show that the wife has any other sources of income or opportunities for acquisition of capital assets in the future. The provisions of the decree, including the proposed trust, are not sufficient to provide for the reasonable needs of the wife. Unless there is a change in the decree, it is apparent that the wife will become a ward of the government in a relatively short time. This is inappropriate where she was the wife of D.C. for 20 years.

We reverse those portions of the decree relative to attorney fees, property disposition and maintenance. In view of the limited financial resources of the wife, we find that an award should be made to the wife of attorney fees and costs, both at trial and on this appeal, with such items to be paid by the husband. Section 40-4-110, MCA. The cause is remanded to the District Court with the following instructions:

1) Determine the wife's reasonable attorney fees and costs, both at trial and on appeal;

2) Re-examine the property disposition and determine a disposition which will meet the reasonable needs of the wife;

3) Based upon the apparent need for lifetime maintenance, determine the reasonable amount of maintenance to be paid by the husband to the wife, with the award to be flexible enough to provide for the needs of both parties as their economic situations change;

4) Consider the comparative needs of the husband and wife and determine if it is reasonably possible to extend the maintenance provisions beyond the retirement or death of the husband. Section 40-4-208(4), MCA.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-